JAMES, VERNON & WEEKS, P.A.
Susan P. Weeks
Idaho State Bar No. 4255
1626 Lincoln Way
Coeur d'Alene, ID 83814
Telephone: (208) 667-0683
Facsimile: (208) 664-1684

Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| MICA KIDD ISLAND FIRE PROTECTION DISTRICT, a governmental subdivision of the State of Idaho, | |
| Plaintiff, | Case No. 2:22-cv-175 |
| v. | COMPLAINT FOR DECLARATORY   RELIEF |
| INTERNATIONAL ASSOCIATION OF FIRE FIGHTERS LOCAL 5005, a union, | |
| Defendant. | |

Mica Kidd Island Fire Protection District, Plaintiff, by and through its attorney of record, Susan P. Weeks, of James, Vernon & Weeks, P.A., for its complaint against the International Association of Fire Fighters, Local 5005, alleges as follows:

1.  Plaintiff Mica Kidd Island Fire Protection District ("District") is a governmental subdivision of the State of Idaho, organized and existing pursuant to Idaho Code Title 31, Chapter 14.

2.   The International Association of Fire Fighters Local 5005 ("Local 5005") is a labor organization within the meaning of the National Labor Relations Act, 29 U.S.C.A. §§ 125(a), 152(5), with its principal offices located at Worley, Idaho.

3.   The court has jurisdiction over this matter under the LMRA, 29 U.S.C.A. § 185(c).

4.   Venue is proper in this court under 28 U.S.C.A. § 1391(b)(1) and (b)(2), in that Defendant is a resident of the district of Idaho and a substantial part of the events or omissions giving rise to the claim occurred here.

5.   The District and Local 5005 entered into a Collective Bargaining Agreement ("CBA") on February 2, 2021 which remains in full force and effect.  A true and correct copy of the CBA is attached as Exhibit A.

6.   Article 23, Probation, Section A, of the CBA provided:

SECTION A - ENTRY LEVEL PROBATION:

Employees in their first twelve (12) months of employment shall be considered probationary. **During the probationary period, employees may be terminated without cause and without recourse to the grievance and arbitration provisions of this agreement.**  (Emphasis added.)

7.   The CBA provides at Article 24, Disciplinary Procedures, as follows:

SECTION A- JUST CAUSE:

**After completion of the probationary period**, no employee shall be disciplined or discharged except for just cause and after being afforded due process.  (Emphasis added.)

8.   Article 22 of the CBA, Section D, Arbitrator's Powers, provides:

The arbitrator(s) shall render a decision within ninety (90) calendar days of hearing, which shall be final and binding on both parties. **The arbitrator shall have no power to alter, amend, or change the terms of this Agreement**; rather, the power of the arbitrator shall be limited to interpretation of or application of the terms of this Agreement or to determine whether there has been a violation of the terms of this Agreement by either the DISTRICT or the UNION. The arbitrator shall not have authority to award punitive damages. Each party shall pay the expenses of

their own representatives, including attorneys' fees, their own witnesses, and other costs associated with the presentation of their case. The expense of the neutral arbitrator(s) and the reasonable expenses of the arbitration itself, including transcripts of the hearing, payment for use of the facilities, and other like costs, shall be shared equally between both parties.  (Emphasis added.)

9.   On March 12, 2021, the District extended an offer of employment to Austin Bedwell.  Mr. Bedwell was informed in the offer of employment that he would be a probationary employee for 12 months.  A true and correct copy of the offer letter is attached hereto as Exhibit B.

10. On February 14, 2022, prior to the expiration of the 12-month probationary period, Mr. Bedwell was terminated by Plaintiff.

11. On March 12, 2022, Local 5005 filed a grievance purportedly in compliance with Article 22 contending the termination of Mr. Bedwell violated the CBA because Mr. Bedwell was discharged without just cause, and without a *Loudermill* hearing, in violation of the provisions addressing non-probationary employees.  Concerning Mr. Bedwell's probationary status, Local 5005 contended:

> In addition to the violations of the collective bargaining agreement, we believe the language in the agreement that separates probationary from non-probationary members creates two classes of employees and may be illegal under Idaho's Right to Work statute as well the U.S. Supreme Courts' Janus vs. ASFCME ruling in 2018. While this has not been challenged in court yet, we believe the intent of the statute and the ruling is to prevent the creation of different classes of employees and the rights afforded to them.

A true and correct copy of the grievance is attached hereto as Exhibit C.

12. On March 22, 2022, in accordance with the grievance procedures of the CBA, Fire Chief Matue denied the grievance because Mr. Austin was a probationary employee under the terms of the CBA and the grievance procedures did not apply to probationary employees.  A true and correct copy of the denial is attached hereto as Exhibit D.

13. On March 28, Local 5005 initiated Step 3 of the grievance procedures set forth in Article 22 by appealing Fire Chief Matue's determination to the Board of Commissioners of the District. A true and correct copy of the appeal is attached hereto as Exhibit E.

FIRST CAUSE OF ACTION

Declaratory Judgment

14. The Plaintiff repeats, realleges and incorporates here all of the allegations set forth above.

15. This cause of action arises under 28 U.S.C.A. § 2201 and the laws of the State of Idaho.

16. There is a substantial controversy of immediate sufficiency and reality in that based on Local 5005's interpretation of Idaho statute and *Janus vs. Am. Fed'n of State, Cnty., and Mun. Empls., Council 31,* 138 S.Ct. 2448 (2018), it contends the probationary provisions of the contract are void, and gives it a basis to grieve Mr. Bedwell's termination as though he were covered in the CBA despite the express terms of the CBA excluding him from its provisions.

17. The Plaintiff is entitled to a judicial declaration that the probationary terms of the contract apply to probationary employees, and specifically to Mr. Bedwell, and his termination was in accordance with the express terms of the CBA.

THEREFORE, for all the above reasons, the Plaintiff respectfully requests that this court issue an Order:

A. Declaring that the challenged probationary terms of the contract are not invalid and apply to Plaintiff's probationary employees, including Mr. Bedwell.

B. Awarding the Plaintiff its reasonable attorneys' fees and costs; and

C.  Awarding such other and further relief as the court deems just, equitable and proper.

DATED this 19th day of April, 2022.

JAMES, VERNON & WEEKS, P.A.

By: */s/ Susan P. Weeks*
    Susan P. Weeks
    Attorney for Plaintiff

# COLLECTIVE BARGAINING AGREEMENT

Between

 

**MICA KIDD ISLAND FIRE PROTECTION DISTRICT**  **WORLEY FIREFIGHTERS LOCAL 5005- MKI BARGAINING UNIT**



## INTERNATIONAL ASSOCIATION OF FIREFIGHTERS

# February 2ⁿᵈ, 2021 – February 1ˢᵗ, 2024

EXHIBIT A

## TABLE OF CONTENTS

PREAMBLE .............................................................................................................6

ARTICLE 1 - Recognition.........................................................................................6

ARTICLE 2 - Term of Agreement ............................................................................6

    SECTION A- TERM: ...........................................................................................6

    SECTION B- SUPPLIMENTAL AGREEMENTS: ...................................................6

ARTICLE 3 - Agreement to Bargain New Contract ..................................................6

ARTICLE 4 - Non-discrimination .............................................................................7

ARTICLE 5 - Rights of Management .........................................................................7

    SECTION A- RIGHTS OF MANAGEMENT:.........................................................7

    SECTION B- ENUMERATION OF RIGHTS:..........................................................7

    SECTION C- LIMITATION: ................................................................................8

    SECTION D- Nullification:................................................................................8

ARTICLE 6 - Prevailing Rights .................................................................................8

ARTICLE 7 - Union Business.....................................................................................8

    SECTION A- MEETINGS: ..................................................................................8

    SECTION B- UNION BULLeTEN BOARDS:..........................................................8

ARTICLE 8 - Union Dues and Fee's .........................................................................9

    SECTION A- DUES DEDUCTION: ......................................................................9

    SECTION B- HOLD HARMLESS:.........................................................................9

ARTICLE 9 - UNION Security ...................................................................................9

    SECTION A- DUES:...........................................................................................9

    SECTION B-AUTHORIZATION ..........................................................................9

    SECTION C- DUES DEDUCTION:.......................................................................9

    SECTION D- CHANGES:....................................................................................9

ARTICLE 10 - Performance of Duty .......................................................................10

    SECTION A- WORK STOPPAGE:.......................................................................10

    SECTION B- RULES & REGS:.............................................................................10

    SECTION C- MANDATORY SUBJECT OF BARGAINING: ....................................10

    SECTION D- REVITALIZATION:.........................................................................10

    SECTION F- NORMAL DUTIES .........................................................................11

**ARTICLE 11 - Work Schedules and Overtime Pay ....................................................11**

    SECTION A- WORK SCHEDULE: ....................................................................................................11

    SECTION B- SCHEDULE ADJUSTMENT AND TRANSFERS ..................................................................12

    SECTION C- GENERAL......................................................................................................................12

    SECTION D- CALLBACK: ...................................................................................................................12

    SECTION E- ATTENDING DISTRICT MEETINGS: ...............................................................................12

**ARTICLE 12 - Court-Subpoenaed Witness or Jury Duty.........................................12**

    SECTION A- EMPLOYMENT RELATED ..............................................................................................12

    SECTION B- JURY DUTY ...................................................................................................................13

**ARTICLE 13 - Sick Leave ........................................................................................13**

    SECTION A- SICK LEAVE SCHEDULE AND ACCRUAL: ........................................................................13

    SECTION B- SICK LEAVE USAGE:......................................................................................................13

    SECTION C- DONATED LEAVE..........................................................................................................14

    SECTION D- LIGHT DUTY: ................................................................................................................14

    SECTION E- INJURY WHILE ON LIGHT DUTY:....................................................................................14

    SECTION F- NOTIFICATION:.............................................................................................................14

    SECTION G- RETURN TO FULL DUTY AFTER EXTENDED MEDICAL LEAVE: ...........................................15

    SECTION H- FITNESS FOR DUTY AFTER LEAVE OF ABSENCE ..............................................................16

    SECTION I- FITNESS DUTY EXAM FOR CAUSE:..................................................................................16

    SECTION J- PHYSCIAN OPINION CONFLICT RESOLUTION:..................................................................16

**ARTICLE 14 - Vacation Leave and Bereavement and Military Leaves .......................17**

    SECTION A-  VACATION LEAVE:.......................................................................................................17

    SECTION B- PAYOUT: ......................................................................................................................18

    SECTION C-  VACATION LEAVE SELECTION: .....................................................................................18

    SECTION D- BEREAVEMENT Leave:..................................................................................................18

    SECTION E- MILITARY Leave: ..........................................................................................................19

**ARTICLE 15 - Holidays...........................................................................................19**

    SECTION A- Holidays:.....................................................................................................................19

    SECTION B- Holiday Compensation ................................................................................................19

**ARTICLE 16 - Salaries ............................................................................................20**

**ARTICLE 17 – Health Insurance .............................................................................20**

**ARTICLE 18 - Shift Exchange..................................................................................20**

SECTION A- Exchanges:................................................................................................................20

SECTION B-Approval:..................................................................................................................21

SECTION C- Criteria....................................................................................................................21

**ARTICLE 19 - Uniform/PPE.........................................................................................21**

SECTION A- Uniform and PPE:....................................................................................................21

SECTION B- New Hires:...............................................................................................................22

SECTION C- Class B/Polo Use.....................................................................................................22

SECTION D- Uniform return on separation:...............................................................................22

**ARTICLE 20 - Training ...............................................................................................22**

SECTION A- Continuing education and/or re-certification classes: ...........................................22

SECTION B- TRAVEL: ...................................................................................................................23

SECTION C- Denial:.....................................................................................................................23

SECTION D- Costs:......................................................................................................................23

**ARTICLE 21 - Licensure and Certifications...............................................................23**

SECTION A- LICENSES AND CERTIFICATION REQUIREMENT:.....................................................23

SECTION B- CERTIFICATION CLASSES:........................................................................................24

SECTION C- PROFESSIONAL DEVELOPMENT:.............................................................................24

**ARTICLE 22---Grievance Procedure .........................................................................25**

SECTION A- DEFINITION:............................................................................................................25

SECTION B- PROCEDURE:...........................................................................................................25

SECTION C- MANAGEMENT GRIEVANCE: ..................................................................................26

SECTION D- ARBITRATOR'S POWERS:........................................................................................27

**ARTICLE 23 - Probation............................................................................................27**

SECTION A- ENTRY LEVEL PROBATION: .....................................................................................27

SECTION B- PROMOTIONAL PROBATION...................................................................................27

**ARTICLE 24 - Disciplinary Procedures .....................................................................28**

SECTION A- JUST CAUSE: ...........................................................................................................28

SECTION B- UNION REPRESENTATION:......................................................................................28

SECTION C- RIGHT TO REVIEW FILE: .........................................................................................28

SECTION D- PROGRESSIVE DISPLINE:.........................................................................................28

SECTION E: NOTIFICATION OF DISCIPLINE:................................................................................29

SECTION F- UNION NOTIFICATION: ...........................................................................................29

SECTION G- MEMBERS NOT COVERED ........................................................................................................30

**ARTICLE 25 - Terms of Successorship.................................................................................30**

**ARTICLE 26 - Reductions in Force ......................................................................................30**

SECTION A- SOLE DISCRETION:.............................................................................................................30

SECTION B- LEAST SENIOR: .................................................................................................................30

SECTION C- RECALL:...........................................................................................................................30

**ARTICLE 27 - Saving Clause ...............................................................................................31**

**ARTICLE 28 - Annexation, Merger, and Consolidation .........................................................31**

**ARTICLE 29 - Substance Abuse ..........................................................................................31**

Prohibited Drug or Alcohol Activities: ...................................................................................................31

Drug or Alcohol Testing: ......................................................................................................................32

**ARTICLE 30 - RULES AND REGULATIONS ............................................................................32**

**ARTICLE 31 - Vacancies and Promotions.............................................................................33**

SECTION A- VACANCIES: .....................................................................................................................33

SECTION B- EXAM PROCESS.................................................................................................................33

SECTION C- ENTRY LEVEL LIST:.............................................................................................................33

SECTION D- PROMOTIONAL LISTS: .......................................................................................................34

**ARTICLE 32 - Deferred Compensation ................................................................................34**

**ARTICLE 33 - Retiree Medical Trust ....................................................................................34**

SECTION A       34

**ARTICLE 34 - Active 911 ....................................................................................................35**

**ARTICLE 35 - NFPA 1582 Annual Physical...........................................................................35**

**ARTICLE 36 - Tuition Reimbursement.................................................................................36**

**APPENDIX A- Wages and hourly rates................................................................................38**

Converting a 24-Day Work Period to a 14-Day Pay Period..................................................................38

## PREAMBLE

THIS AGREEMENT is entered into, by and between Mica Kidd Island Fire Protection District, hereinafter referred to as the DISTRICT, and the International Association of Fire Fighters UNION, Local #5005, hereinafter referred to as the UNION. It is the purpose of this Agreement to achieve and maintain harmonious relations between the DISTRICT and the UNION, to provide for equitable and peaceful adjustment of differences which may arise, and to establish equitable and fair wages, hours and other conditions of employment.

## ARTICLE 1 - RECOGNITION

Pursuant to Title 44, Chapter 18 of the Idaho Code, the District recognizes the UNION as the exclusive bargaining agent for all paid firefighters of the DISTRICT; except those specifically excluded in Title 44, Chapter 18, to include administrative staff, volunteers and part-time/ Reserve Firefighters.

## ARTICLE 2 - TERM OF AGREEMENT

### SECTION A- TERM:

This Agreement shall be for a term of three (3) years, commencing February 2, 2021, and ending February 1, 2024.

### SECTION B- SUPPLIMENTAL AGREEMENTS:

This Agreement may be amended, provided both parties concur. Supplemental agreements may be completed through negotiations at any time during the life of this Agreement. Either party may notify the other party, in writing, of its desire to negotiate. Supplemental agreements, thus completed, will be signed by the responsible UNION and DISTRICT officials. Supplemental agreements thus completed shall become a part of the larger agreement and subject to all its provisions.

## ARTICLE 3 - AGREEMENT TO BARGAIN NEW CONTRACT

Either the UNION or the DISTRICT may request negotiations for a succeeding term by notifying the other party in writing by 30 days prior to the expiration of this Agreement of its desire to commence negotiations. The party receiving such notice shall acknowledge receipt of the notice in writing. After notification is given, the DISTRICT and the UNION shall schedule an initial negotiation session at a mutually convenient time.

Both parties agree that until a new contract is ratified by both the Board of Fire Commissioners and the UNION all provisions of the most recent contract shall remain in full force.

If the collective bargaining process is not completed within ninety (90) days following the first negotiation session, (or mutually extended for a one-time period of time not to exceed thirty (30) days), an impasse will be declared and any and all unresolved issues shall be presented to a fact-finding commission. The procedures for fact finding shall be in strict accordance with Idaho

Code sections 44-1805 to 44-1810. Pursuant to statute, the recommendations of the fact-finding commission shall be binding on the DISTRICT and the UNION.

## ARTICLE 4 - NON-DISCRIMINATION

### SECTION A:

Neither the DISTRICT nor the UNION will unlawfully discriminate against any employee because of race, color, creed, national origin, ancestry, sex, age, marital status, the presence of physical or mental disability or any other status protected by state or federal law.

### SECTION B:

Wherever words denoting the masculine gender are used in this Agreement, they are intended to apply equally to either gender.

### SECTION C:

The grievance procedure of this Agreement shall be utilized by employees making any claims under this article.

## ARTICLE 5 - RIGHTS OF MANAGEMENT

### SECTION A- RIGHTS OF MANAGEMENT:

All rights of management, as defined by this Agreement, are retained by the District.

### SECTION B- ENUMERATION OF RIGHTS:

The management of the Fire District and the direction of the work force of the District, including the following, are the exclusive functions of management:

1) To plan, direct and control all the operations or services to be performed in or at any facility or by employees of the DISTRICT;
2) To schedule the working hours;
3) To hire, promote, transfer, lay off and recall;
4) To suspend, discipline, demote, or discharge, for just cause;
5) To make, enforce, change, add to, or delete from reasonable rules and regulations of employee conduct and performance;
6) To make and enforce work standards;
7) To determine the content of job classification;
8) To introduce new and improved methods, materials, equipment or facilities; and,
9) To change or eliminate materials, equipment or facilities.

## SECTION C- LIMITATION:

The exercise of any of the rights enumerated in this Article shall not conflict with, and must be exercised consistent with, other provisions of this Agreement.

## SECTION D- NULLIFICATION:

Nothing in this Article shall nullify:

1) any provisions elsewhere in this Agreement, or;
2) the District's statutory obligation to negotiate with the UNION pursuant to Idaho Code Title 44, Chapter 18.
3) All rights and benefits in this agreement supersede previous policies, SOG's, and protocols of the DISTRICT.

## ARTICLE 6 - PREVAILING RIGHTS

All rights, benefits and privileges held by the members which are not included in this agreement shall remain in force, unchanged and unaffected in any manner, subject to the Right of Management as set forth in Article 5.

## ARTICLE 7 - UNION BUSINESS

### SECTION A- MEETINGS:

The DISTRICT may allow monthly UNION meetings at DISTRICT facilities. The meetings shall not interfere with the operational activities of the DISTRICT. No DISTRICT resource shall be used for UNION business (for example, computers, internet access, etc.) without DISTRICT approval. Reasonable use of the district copier shall be allowed in exchange for the UNIONS replenishment of paper and toner.

### SECTION B- UNION BULLETEN BOARDS:

The DISTRICT shall allow the UNION to post official UNION notices and bulletins on bulletin boards in each fire station, which board shall be provided by the UNION and shall not to exceed twelve (12) square feet. Placement of the bulletin boards must be approved by the Fire Chief or his or her designee. The UNION shall limit its postings to these bulletin boards. All postings shall be removed if no longer current. The UNION shall be responsible to keep all UNION postings orderly and neat in appearance.

## ARTICLE 8 - UNION DUES AND FEE'S

### SECTION A- DUES DEDUCTION:

The DISTRICT agrees to deduct, per pay period, dues and assessments certified by the Treasurer of the UNION from the pay of those employees who individually request, in a proper, written authorization that such deductions be made. The total amount of deductions shall be remitted by the DISTRICT to the Treasurer of the UNION.

### SECTION B- HOLD HARMLESS:

The UNION shall indemnify and hold the DISTRICT harmless from and against any and all claims, demands, suits, or any other actions that arise out of or by reason of action taken or not taken by the DISTRICT in reliance upon documents or cards or other information furnished to the DISTRICT by the UNION in complying with this Article.

## ARTICLE 9 - UNION SECURITY

### SECTION A- DUES:

The UNION may request present or future UNION members to pay to the UNION a monthly service charge. For UNION members that service charge will constitute that member's UNION dues, fees, and assessments.

### SECTION B-AUTHORIZATION:

The UNION shall request each UNION member to sign and file with the DISTRICT a written authorization approving the deduction of the service charge from wages and remittance to the UNION. The authorization from the employee shall remain in effect until the employee gives written notice to the DISTRICT of revocation of the employee's authorization.

### SECTION C- DUES DEDUCTION:

The DISTRICT agrees to deduct authorized monthly service charges, in amounts specified by the UNION, from the pay of UNION members upon receipt of the written authorization from the employee. The DISTRICT further agrees to transmit those amounts monthly to the UNION on or about the first day of the month following the date such monthly service charges are withheld from wages of each employee.

### SECTION D- CHANGES:

The UNION agrees to give the DISTRICT a minimum of thirty (30) days written notification prior to the payroll input date of any change in the monthly service charge.

## ARTICLE 10 - PERFORMANCE OF DUTY

The UNION and the DISTRICT agree that public interest requires the effective and uninterrupted performance of emergency services. Nothing in this Agreement shall be construed to give an employee the right to strike against the DISTRICT and no employees shall strike or refuse to perform their duties to the best of their ability during the term of this Agreement.

### SECTION A- WORK STOPPAGE:

Neither the UNION nor any of its members shall cause, encourage, or participate in any strike, picketing, slowdowns, sick outs, walk outs, or any other work stoppage or interference with the DISTRICT's services or operations.

### SECTION B- RULES & REGS:

Both the UNION and its members agree they shall comply in full with the DISTRICT 's rules and regulations, including those related to conduct and work performance. The employer agrees that DISTRICT rules and regulations, policies and procedures which directly affect wages, hours, working conditions, performance, terms or conditions of employment shall be subject to the grievance procedure.

### SECTION C- MANDATORY SUBJECT OF BARGAINING:

Changes in rules and regulations, policies and procedures which directly affect wages, hours, terms and condition of employment are considered mandatory subjects of bargaining and shall be mutually agreed between the DISTRICT and the UNION prior to their implementation.

### SECTION D- REVITALIZATION:

The UNION and the DISTRICT agree that public interest requires the effective and uninterrupted performance of emergency services. In order to provide uninterrupted service, the District recognizes the necessity to provide periods of rest during an employee shift; so that they can carry out emergency operations.

The District recognizes Revitalization Time as follows:

1) Those hours of a forty-eight (48) hour set that occur between 2200- 0700 hours. The hour 0700 may be extended at the discretion of the Chief Officer.
2) It is the responsibility of the Chief Officer to ensure that all personnel assigned are receiving adequate rest periods to facilitate the safety and wellbeing of the employee.

Work assignments during Revitalization Time may include:

1) Emergency Response

2) Reservicing Emergency Equipment
3) Incident Reporting

## SECTION F- NORMAL DUTIES:

No employee covered by this Agreement shall be required to perform duties not associated with:

1) Firefighting, fire prevention, maintenance of firefighting apparatus, equipment, tools, or facilities, which does not require specialized or technical skill that the typical firefighter does not possess, and other duties as are necessary for the efficient operation of the DISTRICT.
2) BLS, ILS, or ALS activities, ambulance transports and rescue duties in connection with the operation of the Fire District; or
3) Demonstrations or instructions to the public or various organizations concerning public safety; or
4) Other duties included in the goals and mission of the District as set forth in the District's mission statement as mutually agreed to by the Union member and Supervisor; or
5) Duties not associated with the District Job Description for their position.

# ARTICLE 11 - WORK SCHEDULES AND OVERTIME PAY

## SECTION A- WORK SCHEDULE:

The normal work schedule for full time suppression employees covered by the terms of this agreement shall be a three-platoon system, forty-eight (48) hour shift schedule, continually rotating from year to year.

The normal shift work schedule shall be from 08:00 – 08:00 the next day.

The Fair Labor Standards Act section 7(k) partial exemption work period for employees covered under this Agreement is 24 days.

Suppression personnel covered by this Agreement, work on a twenty-four (24) day/192 hour pay period consisting of forty-eight hours on duty consisting of two (2) separate twenty-four (24) hour shifts running consecutively, followed by ninety-six (96) hours off duty, and repeated throughout the twenty-four (24) day/192 hour pay period. Suppression personnel salaries shall be based on the established Fair Labor Standards Act (FLSA) 24-day work period with any hours scheduled over 182 paid at time and one-half overtime rate above and beyond the agreed upon annual base wage.

All full-time fire suppression employees shall be paid overtime pay for all hours worked outside of the regularly assigned duty schedule as outlined in SECTION A of this article. Time compensated by leave shall be counted towards hours worked.

## SECTION B- SCHEDULE ADJUSTMENT AND TRANSFERS:

The DISTRICT may adjust the schedules set forth in Section A of this Article as the needs and circumstances of the DISTRICT dictate. The DISTRICT maintains the right to transfer employees, temporarily or permanently, from one shift to the other as the needs and circumstances of the DISTRICT dictate. The DISTRICT agrees the members covered under this agreement are not required to staff other departments.

## SECTION C- GENERAL:

1) Except as provided otherwise in this Agreement, overtime pay shall be made when required in accordance with the Fair Labor Standards Act.
2) All overtime must be approved in advance by the Fire Chief or his or her designee.
3) The overtime rate shall be one and one-half times the regular hourly rate.
4) Any training or event deemed mandatory for an employee while off duty (not the employee's regular shift) will be paid at the overtime rate.
5) The District agrees to provide minimum staffing of one full-time paid firefighter, as defined under Article 1 of this agreement. Constant staffing will continue up and to and until the district reaches ten thousand in back fill costs. The $10,000.00 dollar backfill limit will reset on the first day of the new fiscal year and will remain in effect for the duration of this CBA.
6) If after all qualified full-time firefighters have been offered the opportunity to work outside their normally scheduled hours to maintain minimum staffing, and sufficient Full-time Firefighters are not available to meet the minimum staffing requirements, the DISTRICT may reserve the right to staff the district as they see fit.

## SECTION D- CALLBACK:

1) An employee called back to work shall be compensated a minimum of two (2) hours.
2) The process for and decision of who to select for callback overtime shall be set forth in a fair and equitable way as decided between the UNION and DISTRICT.
3) Any employee being called back or mandatory held beyond the normal 48-hour shift work schedule shall be compensated at their current overtime rate.

## SECTION E- ATTENDING DISTRICT MEETINGS:

Any employee that attends District authorized meetings, that are required by the Fire Chief or Designee, shall be paid overtime when not on duty.

## ARTICLE 12 - COURT-SUBPOENAED WITNESS OR JURY DUTY

## SECTION A- EMPLOYMENT RELATED:

Employees shall be given authorized leave to appear before a court, judge, justice, magistrate, or coroner as a defendant or witness in any proceeding arising directly out of the performance of the employee's duties. Any off-duty time during which a member is required to thus appear shall be compensated at one-and-one-half (1 ½) times the employee's hourly rate. The

employee will also be entitled to compensation for their travel time to and from the appearance location.

## SECTION B- JURY DUTY:

Any employee who is called for jury duty in any municipal, county, state, or federal court shall advise the District upon receipt of such notice. The employee will be excused from work for the actual time spent reporting for jury duty, plus travel time and shall return to work immediately after being excused from jury duty for the day. When serving as a juror, an employee may be excused by a chief officer from additional duty hours to fulfill this duty as a juror, staffing permitting.

If an employee is absent from work while engaged in jury duty, the employee will be paid his regular wage provided the employee reimburses the District the amount of compensation the member receives from the court for each day or partial day the employee was absent from work. The employee shall reimburse the District within fifteen (15) days of the members' receipt of compensation for jury duty.

## ARTICLE 13 - SICK LEAVE

### SECTION A- SICK LEAVE SCHEDULE AND ACCRUAL:

1) 24-hour shift employees shall accrue sick leave on an hourly basis at the rate of twelve (12) hours per each month of service completed from the date of hire.
2) Sick leave shall not accrue during a leave of absence without pay or during layoffs.
3) The maximum sick leave accrual will be one thousand four hundred forty 480 hours for 24-hour shift employees.

### SECTION B- SICK LEAVE USAGE:

All employees shall be allowed to use sick leave with pay at the employee's regular rate when he/she is incapacitated for the performance of his or her assigned duties by reason of sickness or injury resulting from causes beyond the employee's control, or when through exposure to contagious diseases, the presence of the employee at his post of duty would jeopardize the health of others, or for any other reason granted by law. Use of sick leave for absences resulting from on-the-job injuries shall be governed by applicable state law.

1) One (1) hour sick leave will be charged for each one (1) hour off duty.
2) Regularly scheduled hours off duty shall not be charged against sick leave.
3) Sick leave absences of 24-hour shift employees that extend for three (3) consecutive shifts shall require certification of the employee's condition by a physician upon the employee's return to duty. Failure to produce such certification shall be grounds for denying sick leave pay. The provisions in Section B5 shall not apply if the employee is using sick leave to take

care of an immediate family member as defined in Article 14 section D number 2 of this agreement.

4) Abuse and misuse of sick leave is grounds for disciplinary action up to and including discharge. The DISTRICT maintains the right at any time it suspects abuse or misuse of sick leave to require the employee to provide certification from an attending physician or health care provider attesting to the illness or injury.

5) The request for sick leave shall be made to the Fire Chief or Designee no later than one (1) hour prior to the start of the shift.

## SECTION C- DONATED LEAVE:

1) Employees can elect to donate sick leave to other employees who have a non-work-related injury or illness.

2) Employees electing to donate sick leave to other employees must maintain a minimum of 96 hours of their own accrued sick leave.

3) Employees electing to donate sick leave to other employees forfeit all use or benefit of donated sick time.

4) An employee may use donated sick leave after he/she has exhausted all accrued leave hours available to them.

5) Usage of donated leave must be approved in advance by the Fire Chief or his/her designee.

## SECTION D- LIGHT DUTY:

1) Employees covered by this Agreement who cannot perform their regular duties due to an off the job injury or illness may request light duty.

2) Employees covered by this Agreement who cannot perform their regular duties due to an on-the-job injury or illness may be assigned to light duty by the District.

3) The DISTRICT will provide the employee and the UNION with written notification of its desire to have the employee perform light duty. The type of productive work performed in this assignment will be specified by the DISTRICT based on the needs of the DISTRICT, and a medical release given by the employees' primary physician. Employees on light duty will have all the rights and benefits as if on full duty. They will also accrue Vacation Leave and sick leave while on light duty. The employee will immediately be available for a light duty assignment pending a doctor's release to light duty. If the DISTRICT allows an employee to work light duty, it will provide a written statement of the type of work required which statement will be used by the releasing physician in determining the employee's ability to do that work. The DISTRICT may require either days or shift work assignments.

## SECTION E- INJURY WHILE ON LIGHT DUTY:

Any on-duty injury or re-injury that occurs while performing light duty will be treated the same as any other on-duty injury or re-injury provided for in this Article.

## SECTION F- NOTIFICATION:

If an employee is absent for three or more consecutive shifts for a medical reason, the employee shall ensure the DISTRICT is notified of their anticipated return to work date.

Furthermore, the employee will notify their divisional supervisor if the employee is absent from work and receives medical attention for a condition that limits the ability to perform their duties. The supervisor may request a release to return to work from the employee's treating physician.

## SECTION G- RETURN TO FULL DUTY AFTER EXTENDED MEDICAL LEAVE:

1) Any employee who has been absent from work for medical reasons for four (4) or more consecutive weeks (30 calendar days) shall be required by the Fire District to have their fitness for duty verified through an examination conducted by a physician with Occupational Medical Associates (OMA) or other designated physician in the subject area of specialty as a condition precedent to the return to duty. This exam shall be conducted as soon as practical upon written release for return to full duty by the employee's treating physician and shall be paid for by the Fire District. If an employee has been absent for more than one hundred eighty (180) consecutive days refer to paragraphs 4 and 5 of this section.

2) Although the emphasis of the examination will be the site of the injury or medical condition, the examination will include an evaluation and determination of whether the employee can perform the essential functions of his/her position with or without a reasonable accommodation. The DISTRICT will pay the costs associated with any such examination, and the results of the examination will be provided in writing to the DISTRICT and employee. The results will address whether the employee is fit or unfit for duty only. If the results indicate the employee is unfit for duty the results shall state what duties cannot be performed. If more information is needed the employee may wave HIPAA, at their discretion, and allow further discussion with the physician.

3) *If the employee is found fit for return to duty*, the employee shall be returned to regular duty assignment immediately.

4) *If the employee is found unfit for immediate return to regular assigned duty, but the prognosis for regaining fitness for regular duty is both conclusively favorable and definitively certain as to time*, then the Fire Chief, at his sole discretion, may grant additional personal leave time as either earned and accumulated personal leave if the employee has such personal leave time remaining or unpaid long term sick leave, for a time to be determined solely by the Fire Chief. If the employee is determined unfit for return to regular duty at the end of this term of additional leave time granted by the Fire Chief, the employee shall then be immediately terminated.

5) *If the employee is found unfit for immediate return to regular assigned duty and the prognosis for regaining fitness for regular duty is either unfavorable or uncertain as to time*, then the employee shall be immediately terminated.

6) In the event of termination, the employee shall be compensated for any remaining unused Vacation leave time in accordance with the provisions for such compensation in this Agreement.

7) In the case of a conflict between the employee's treating physician and the OMA physician or designated physician in the subject area of specialty regarding the employees return to work status, Section J of this article will be implemented.

## SECTION H- FITNESS FOR DUTY AFTER LEAVE OF ABSENCE:

The DISTRICT may require the employee to submit to a fitness-for-duty examination by a DISTRICT-designated physician when the employee is returning from a leave of absence of more than 90 days. The examination will be limited to determining whether the employee can perform the essential functions of his/her position with or without a reasonable accommodation. The DISTRICT will pay the costs associated with any such examination, and the results of the examination will be provided in writing to the DISTRICT and employee.

## SECTION I- FITNESS DUTY EXAM FOR CAUSE:

The DISTRICT may require the employee to submit to a fitness-for-duty examination by a DISTRICT designated physician when the DISTRICT has a reason to believe that an employee's ability to perform an essential job function may be impaired by a medical condition or could pose a direct threat to the employee or others in the workplace. The DISTRICT will pay the costs associated with any such examination, and the results of the examination will be provided in writing to the DISTRICT and employee.

## SECTION J- PHYSCIAN OPINION CONFLICT RESOLUTION:

The parties agree that in those cases where the OMA or other designated physician in the subject area of specialty physician is unable or unwilling to conclude that an employee is able to perform the essential functions of their position despite a treating physician's recommendation to the contrary, the following review process shall be utilized:

The DISTRICT and the UNION representing the employee shall agree upon the appointment of a third-party physician, who has experience or training in a medical field that is relevant to the employee's particular medical condition(s) or issue(s). The physician shall be asked to determine the employee's ability to perform the essential functions of his/her position. Where the condition(s) or issue(s) require the expertise of more than one physician, the DISTRICT and the UNION shall agree upon the appointment of a multi-specialty panel. (The third-party physician or panel is hereinafter interchangeably referred to as the "third-party physician.") The third-party physician shall be notified that such review is to be limited to determining whether the employee is able to perform the essential functions of their position.

The third-party physician shall be provided the job analysis for the employee's position and all information upon which the DISTRICT'S designated physician and/or the employee's treating physician relied in coming to their respective opinions, and the employee shall sign any documents that are necessary to facilitate such third-party physician review (which may include a release of medical records and/or written authorization for these physicians to discuss the case directly with each other). The employee shall be made aware of all information and shall be provided copies of all documents or records, that will be provided to the third-party physician. The employee shall be allowed to supplement the information provided to the third-party physician if necessary, to ensure that the third-party physician has a complete record of all

relevant information. However, any information provided to the third-party physician shall also be made available to the treating physician and the DISTRICT's designated physician.

If an employee is unwilling to release medical records or otherwise waive medical privacy to facilitate this review process, the third-party physician shall not be allowed to consider medical records or information that have not also been provided to the DISTRICT'S designated physician.

The decision of the third-party physician, or a majority of any multi-specialty panel, regarding the employee's fitness for duty shall be final without grievance. Pending the final results of the fitness for duty evaluation process as outlined herein, the employee will be entitled to any leave, reasonable accommodation or other rights under this Agreement, the DISTRICT's personnel policies, and applicable law.

All medical records, medical information and/or any other information that is made part of this review process shall be strictly confidential and shall not be shared or discussed with DISTRICT employees or representatives, except those as permitted by law. DISTRICT employees and representatives, including DISTRICT legal counsel, may be granted access to relevant records or medical information as necessary in providing legal advice and/or defending against any grievance, civil action or administrative action, subject to any restrictions under applicable law. The DISTRICT and employee agree to pay for fees charged by the retention of the third-party physician equally.

Nothing within this article shall be misconstrued as waiving the employee's right to file a grievance for violation of Article 4 of this Agreement.

## ARTICLE 14 - VACATION LEAVE AND BEREAVEMENT AND MILITARY LEAVES

### SECTION A- VACATION LEAVE:

Vacation Leave is available and accrues on a monthly basis from the start of full-time non-exempt employment in the following manner:

### 24-Hour Shift Employees

| Service Time in Months | Hours Accrued Annually |
|---|---|
| 6-12 | 48 |
| 13 -36 | 96 |
| 37 -60 | 168 |
| 60 + | 240 |

Maximum Vacation Leave accrual allowed will be 240 hours.

## SECTION B- PAYOUT:

If an employee separates from the DISTRICT, only those hours that have currently accrued to the final paycheck will be honored with paid Vacation Leave or financial compensation at the employee's then current rate of pay. The maximum available for buyout in the Vacation Leave category is 240 hours.

Employees shall have the option of exchanging a maximum of 96 hours of accrued vacation time for straight time within a fiscal year period. The employee must keep a minimum of 96 hours of vacation. Vacation payout exchange will be paid to the employee within 30 days of request.

## SECTION C- VACATION LEAVE SELECTION:

1) Vacation Leave shall be taken as requested by the employee, with the approval of the Fire Chief or his or her designee. Vacation Leave requests for forty-eight (48) hours or less must be made at least ninety-six (96) hours in advance of the start of the requested vacation leave. The Fire Chief or his or her designee may grant vacation leave with less than 96 hours in advance of the start of the requested vacation leave on a case-by-case basis.
2) Vacation leaves requests for greater than forty-eight (48) hours shall be approved on the basis of seniority with the DISTRICT in a bidding process to be conducted by the Fire Chief or his/her designee in December of each year for the next calendar year. The DISTRICT shall retain the sole discretion to establish and implement the bidding process.
3) Any request for alterations to the vacation leave schedule established by the bidding process must be requested of the Fire Chief or his/her designee and will be approved at his or her sole discretion. All approved leave during the bidding process shall be guaranteed.
4) All vacation leave requests submitted and approved more than thirty-one (31) days prior to the date of the leave are the responsibility of the District to cover for staffing. All vacation leave requests submitted and approved less than thirty-one (31) days prior to the date of the leave are the responsibility of the person making the request to cover for staffing.

## SECTION D- BEREAVEMENT LEAVE:

1) In the case of death of a, of an employee's immediate family member, employees covered under this agreement shall be granted bereavement leave up to two (2) 24 hour shifts off with pay.
2) "Immediate family" is defined as mother, father, brother, sister, spouse, children, grandparents by blood or marriage, mother-in-law, father-in-law, sister-in-law, brother-in-law, daughter-in-law, son-in-law, grandchildren by blood or marriage. The intent of bereavement leave is to provide employees with adequate time to be with their immediate family during the period of anguish, whether it be at the time of death, preparation of funeral arrangements, and/or to attend a funeral. The employee is required to contact their supervisor as soon as possible by telephone or otherwise if a bereavement leave is

requested. The employee requesting bereavement leave shall complete a Personal Leave/Time off Request form within two (2) days after returning to work.

3) Hours needed in excess of the bereavement leave provided in Paragraph 1 above shall be granted as sick leave through the Fire Chief or his/her designee. If the death of the family member occurs while the employee is on duty, the remainder of that shift shall <u>not</u> be used when considering the total bereavement leave.

## SECTION E- MILITARY LEAVE:

It is the intent of the DISTRICT to provide military leave as required by law.

## ARTICLE 15 - HOLIDAYS

### SECTION A- HOLIDAYS:

Holidays are as follows:

New Year's Day, January 1

Martin Luther King Day, 3rd Monday of January

Presidents' Day, 3rd Monday of February

Memorial Day, last Monday of May

Independence Day, July 4

Labor Day, 1st Monday in September

Columbus Day, 2nd Monday of October

Veteran's Day, November 11

Thanksgiving Day, 4th Thursday in November

Christmas Day, December 25

### SECTION B- HOLIDAY COMPENSATION:

Holiday compensation shall be paid to full time fire suppression employees 60 hours x Regular Hourly Rate

This payment shall be made as a single payment in the last payroll period of the month of November, except for employees with less than twelve (12) months of continuous employment with the District as of November 30, in which event the holiday compensation set forth above

shall be prorated for the number of days employed in the twelve-month period ending November 30.

The holiday compensation set forth above is in addition to regular pay for all hours worked on a holiday.

## ARTICLE 16 - SALARIES

### SECTION A:

The salaries of the employees governed by this Agreement are set forth in Appendix "A," which is attached and incorporated by reference.

## ARTICLE 17 – HEALTH INSURANCE

### SECTION A:

The DISTRICT agrees to continue the current health insurance provided by Blue Cross of Idaho or equivalent, at current rates with no reduction of benefits, for the duration of the contract.

### SECTION B:

The employees subject to this Agreement and the UNION agree to indemnify and hold harmless the DISTRICT from any and all claims against the DISTRICT and its employees resulting from any and all disputes regarding coverage by the insurance carriers providing coverage under this Article. Any and all disputes regarding coverage by the insurance carriers providing coverage under this Article shall not be subject to the grievance and arbitration procedures of this Agreement.

### SECTION C:

If an employee chooses to opt out of the provided health care coverage, the DISTRICT shall pay 100% of the plan premium in lieu of health care coverage and this amount shall be added to the employee's monthly pay, upon the employee's proof of alternate coverage of a similar/comparable amount. Alternate Coverage cannot include Medicaid or State equivalent. Employee must show proof of coverage and must notify the district with 30 days if coverage lapses.  Employees Failure to notify the DISTRICT may result in disciplinary procedures.

## ARTICLE 18 - SHIFT EXCHANGE

### SECTION A- EXCHANGES:

The UNION and the DISTRICT agree that an employee-shall be allowed to exchange a shift with another employee. Shift exchanges shall be a no cost item to the DISTRICT or interfere with the best interests of the DISTRICT. The Fire Chief or his/her designee must approve all such exchanges which meet the above guidelines.

## SECTION B-APPROVAL:

Shift exchanges for all employees, including probationary fire fighters, must be approved in advance, by the Chief or designee and may be denied for just cause.

## SECTION C- CRITERIA:

The Fire Chief or his/her designee shall grant employees to exchange tours of duty provided the following criteria are satisfied.

1) The trading of time is voluntary by the employees participating in the program and not at the behest of the DISTRICT.
2) The reason for trading arises solely because of the employee's desire or need to attend to personnel matters or approved fire-related schools, and not because of DISTRICT operations or decisions.
3) An approved shift exchange form must be filled out and signed by the employees involved indicating the dates and times of the proposed change.
4) The period during which time is exchanged and paid back must not exceed twelve (12) months.
5) Hours worked during this shift exchange do not count towards FLSA overtime.
6) Where a shift exchange has been authorized and the relief employee does not report for duty, it shall be the responsibility of the relief employee to arrange for his or her replacement. If the relief employee fails this obligation the he or she shall be charged one (1) hour of vacation leave, sick leave  for each hour of reduced coverage.

## SECTION D- HOURS WORKED:

The hours worked shall be excluded by the employer in the calculation of the hours for which the substituting employee would otherwise be entitled to overtime compensation under the Section. Where one employee substitutes for another, each employee will be credited as if he or she had worked his or her normal work schedule for that shift.

## ARTICLE 19 - UNIFORM/PPE

## SECTION A- UNIFORM AND PPE:

The DISTRICT shall provide, at no expense to the UNION or the employee, any and all uniforms, protective equipment, or other equipment or clothing required by the DISTRICT including, but not limited to, all uniform apparel provided to new hires as listed in section B of this Article. It is further agreed that all requests for replacement and repairs of said uniforms and protective

equipment shall be granted on an as-needed basis and be provided to the employee in a timely manner.

## SECTION B- NEW HIRES:

Newly hired employees with the DISTRICT shall be issued the following NFPA compliant uniform articles on/or as soon as possible after their date of hire. The new hires uniform will consist of:

1 Class B duty shirt

2 Midnight navy blue uniform pants

1 Pair black duty boots

1 Black duty belt

1 Name plate

1 "Serving Since" – Tag

4 Midnight navy blue District approved t-shirts

1 District approved navy polo shirts

1 District approved red polo shirts

1 Uniform badge

1 ¼ zip sweatshirts

1 511 style or equivalent winter wear coat or equivalent

1 Ball cap

1 Stocking cap

## SECTION C- CLASS B/POLO USE:

DISTRICT t-shirts shall be worn when performing his/her station duties. Class B or polo uniforms shall be worn when the employee is engaging in public activities.

## SECTION D- UNIFORM RETURN ON SEPARATION:

All uniform items purchased are to remain the property of the DISTRICT and shall be returned to the DISTRICT upon termination of an employee for any reason at the discretion of the Board of Fire Commissioners.

## ARTICLE 20 - TRAINING

## SECTION A- CONTINUING EDUCATION AND/OR RE-CERTIFICATION CLASSES:

The UNION and the DISTRICT agree that the DISTRICT will provide and/or pay for reasonable cost associated with an employee's continuing education and/or re-certification classes that are required to meet the State of Idaho EMS Bureau, Kootenai County EMS Protocol, and/or DISTRICT requirement. The DISTRICT agrees to provide or make available the classes necessary for re-certification on a continuing basis. The UNION agrees that it is the responsibility of the employee to arrange to attend and/or make-up the provided re-certification classes, and that if for any unexcused reason he/she is unable to attend a class provided by the DISTRICT, the responsibility for both shift coverage and cost will be borne by the employee to attend an outside re-certification class.

## SECTION B- TRAVEL:

The DISTRICT and the UNION further agree that in the event it becomes necessary to do so, the DISTRICT will make a good faith effort to provide transportation to and from outside training sites that an employee may need to attend for the purpose of re-certification or continuing education. Use of personal vehicles for travel to pre-approved outside training will be reimbursed at the current IRS reimbursement rate for business use.

## SECTION C- DENIAL:

Training may be denied for any reasonable cause.

## SECTION D- COSTS:

All reasonable cost associated with mandatory classes will be paid in full by the DISTRICT, except as provided in Section A of this Article. Reasonable costs include class costs, lodging, travel if needed, per diem and shift coverage.

## ARTICLE 21 - LICENSURE AND CERTIFICATIONS

## SECTION A- LICENSES AND CERTIFICATION REQUIREMENT:

All employees shall be required, as a condition of employment, to maintain a Driver's License in their state of residency. All employees shall also be required, as a condition of employment, to be certified and maintain all certification for the positions they currently hold, which shall include all certifications required by law.

Failure to maintain current certification or license may result in suspension without pay at the discretion of the Fire Chief or his/her designee. The employee may, at the sole discretion of the DISTRICT, work at a position which does not require the certification until the employee obtains the lost certification. Once the employee reacquires the applicable certification, the employee will be put back to work at the same position he/she had when the employee lost the certification. Failure to obtain licenses or certifications required as a condition of employment,

or ability to perform the essential functions of the position, within a reasonable time, may result in termination of your employment with the DISTRICT.

## SECTION B- CERTIFICATION CLASSES:

The DISTRICT agrees to make available on a regular basis all continuing education requirements for recertification as an Emergency Medical Technician. It shall be the employee's sole responsibility to remain currently certified irrespective of their ability to attend DISTRICT - offered classes. If members covered under this agreement are certified as evaluators or instructors to provide continuing education requirements for recertification as an Emergency Medical Technician, all bargaining unit members may participate in training as trainees, evaluators or instructors on duty. The scheduling of all recertification training shall be at the discretion of the Fire Chief or his or her designee.

## SECTION C- PROFESSIONAL DEVELOPMENT:

1) The DISTRICT shall implement the Professional Development Program and all employees covered under this agreement hired will have the opportunity to be certified as having completed each progressive level of the Professional Development Program within the time period mutually agreed upon with the UNION.  Both parties agree to mutually develop the task books of the Pro-D program for the positions outlined in Section C Number 2 of this article.

2) Employees shall complete the position task books before promoting.

> Firefighter Probation Task Book
>
> Firefighter I Task Book
>
> Firefighter II Task Book
>
> Lieutenant Task Book

3) The DISTRICT will provide professional development trainings.  Employees are required to attend these training opportunities if they are mandatory or may attend if they are optional. If an employee cannot attend professional development training, they may be excused by their Supervisor from attending in case of a family illness, death in the family, childcare issue, prescheduled  vacation leave etc. If an employee cannot attend training, they will work with the DISTRICT to reschedule the missed training as soon as possible.

4) The DISTRICT will provide reasonable resources to employees covered under this agreement in completing the requirements of the professional development program as described above. This includes but is not limited to any classes, materials and books, training and certification testing. All requests for resources must be submitted and approved by the DISTRICT.

5) Employees covered under this agreement failing to complete the recruit and probationary task book requirements shall be subject to the disciplinary procedure up to and including termination.

6) Employees covered under this agreement not completing a grade step position task book as outlined in Subsection #2 shall not receive the grade step pay until such time as all requirements of the task book are completed. If the DISTRICT fails to provide any of the required trainings or certification tests needed to complete a position task book within the time perimeter set forth in Subsection #2 of this section, the employee will be given the grade step pay increase for this step with no penalty. The DISTRICT will provide the missed training or certification opportunity to the employee as soon as practical.

7) Employees covered under this agreement required to attend any training, certification classes or testing outside the DISTRICT during regular work hours where required by the DISTRICT and Professional Development Program shall be granted administrative leave subject to pre-approval by the DISTRICT.

8) Both parties agree any changes to the Probationary, Firefighter I, Firefighter II, Lieutenant Task Books shall be mutually agreed upon by both the DISTRICT and the UNION.

9) Where applicable, all required certifications shall be IFSAC or the state equivalency.

## ARTICLE 22—GRIEVANCE PROCEDURE

### SECTION A- DEFINITION:

A grievance is defined as a dispute of opinion involving the interpretation or application of this Agreement raised by the UNION or an employee covered by this Agreement. Nothing in this Agreement shall preclude the right of the two parties to meet and verbally discuss the grievance in an attempt to resolve the issue. The parties agree that the time limitations provided herein are essential to the prompt and orderly resolution of any grievance, and that failure to abide by the time limitations will result in a waiver of grievance unless an extension of time is mutually agreed upon in writing by DISTRICT and UNION representatives. Grievances shall be resolved in the following manner set forth in this Article. If any of the deadlines below fall on a holiday enumerated in this Agreement or a Saturday or Sunday, the deadline shall be extended to the next business day.

### SECTION B- PROCEDURE:

All grievances must be initiated under the grievance procedure within forty-five (45) calendar days of the alleged violation of the Agreement, or dispute or difference of opinion arises. Any grievances not timely initiated under this provision shall be deemed waived.

Step 1:    Any employee having a grievance shall submit in writing to the UNION's Grievance Committee, all facts relevant to the decision within ten (10) calendar days of the date of his/her supervisor's decision. The UNION Grievance Committee, upon receiving the written and signed petition from the employee, shall determine if a grievance exists and respond in writing to the grievant

within fifteen (15) calendar days after receipt of the grievance.  If in the committee's opinion no grievance exists, no further action is necessary.

Step 2:    If the UNION Grievance Committee finds a grievance exists, the grievant or his or her UNION representative shall submit the grievance in writing to the Fire Chief or his/her designee within ten (10) calendar days of receipt of the UNION Grievance Committee's determination.  The written grievance shall set forth the relevant facts, including a statement specifying all facts regarding the alleged violation, all contract sections allegedly violated, and the specific remedy requested.  The Fire Chief or his/her designee shall render a written decision on the grievance within ten (10) calendar days.

Step 3:    If the grievance is not resolved at Step 2, the grievant, or his or her UNION representative, shall submit the grievance, together with pertinent materials, to the Board of Fire Commissioners within ten (10) calendar days of receipt of the Fire Chief's or his/her designee's decision.  The Board of Fire Commissioners may, at their discretion, consider testimony or additional evidence, beyond the written grievance and the Fire Chief's or his/her designee's decision if necessary, to resolve the grievance, and may schedule presentation of such testimony or additional evidence.  The Board of Fire Commissioners shall submit its written decision within thirty (30) calendar days of receipt of the grievance.

Step 4:    The grievant may appeal an adverse decision of the Board of Fire Commissioners to a neutral arbitrator.  The grievant shall give written notice to the DISTRICT of its intent to submit a grievance to arbitration within fourteen (14) calendar days of the Board of Fire Commissioners' decision.  Within ten (10) calendar days of the UNION's or grievant request to arbitrate, a representative of the UNION and of the DISTRICT shall meet and mutually request a list of seven (7) arbitrators from the Federal Mediation and Conciliation Service (FMCS).  Within ten (10) calendar days of the receipt of the complete list(s) of arbitrators, the DISTRICT and the UNION shall meet and attempt to mutually agree on an arbitrator.  If an arbitrator cannot be agreed upon the parties shall select a first strike by flip of a coin.  The parties shall then alternately strike the names of arbitrators on the list(s) until only one (1) name remains.

## SECTION C- MANAGEMENT GRIEVANCE:

Management grievances, should they arise, will be presented to the UNION President in writing and shall concern alleged violations by the UNION (rather than acts of an employee arising out of his employment) of a specific term(s) of the Agreement.

Such grievances shall be presented to the UNION President within forty-five (45) calendar days of the alleged violation of the Agreement.  The UNION shall respond in writing to the Fire Chief or his/her designee within ten (10) days.  If the grievance is not resolved after the UNION President responds, the DISTRICT may take such grievances to arbitration following the procedure in Section B, Step 5, above.

## SECTION D- ARBITRATOR'S POWERS:

The arbitrator(s) shall render a decision within ninety (90) calendar days of hearing, which shall be final and binding on both parties.  The arbitrator shall have no power to alter, amend, or change the terms of this Agreement; rather, the power of the arbitrator shall be limited to interpretation of or application of the terms of this Agreement or to determine whether there has been a violation of the terms of this Agreement by either the DISTRICT or the UNION.  The arbitrator shall not have authority to award punitive damages.  Each party shall pay the expenses of their own representatives, including attorneys' fees, their own witnesses, and other costs associated with the presentation of their case.  The expense of the neutral arbitrator(s) and the reasonable expenses of the arbitration itself, including transcripts of the hearing, payment for use of the facilities, and other like costs, shall be shared equally between both parties.

The use mediation before arbitration may be implemented if both parties agree to this option.  The selection of a neutral mediator shall be agreed to by both parties and costs associated with such mediation shall be shared equally.

## ARTICLE 23 - PROBATION

## SECTION A- ENTRY LEVEL PROBATION:

Employees in their first twelve (12) months of employment shall be considered probationary.  During the probationary period, employees may be terminated without cause and without recourse to the grievance and arbitration provisions of this agreement.

## SECTION B- PROMOTIONAL PROBATION:

Employees in their first year of promotion shall be considered probationary. During the probationary year, employees may be demoted with cause. Cause shall mean the employee received notice of the performance deficiencies and an explanation for the Fire District's decision to demote during the probationary year.  If the employee is demoted the employee shall be demoted to their most recent former rank, position and rate of pay.

If an employee feels they can no longer perform the duties of the promoted position during probation the employee may be allowed to be demoted to the employee's most recent former rank, position and rate of pay.

## ARTICLE 24 - DISCIPLINARY PROCEDURES

### SECTION A- JUST CAUSE:

After completion of the probationary period, no employee shall be disciplined or discharged except for just cause and after being afforded due process.

### SECTION B- UNION REPRESENTATION:

The employee shall be entitled to have UNION representation present at any meeting requested by the DISTRICT to discuss potential disciplinary action against him or her.

### SECTION C- RIGHT TO REVIEW FILE:

Each employee shall have the right to review his or her personnel file within a reasonable time after the request is made.  Upon written authorization by an employee, the employee's UNION representative shall have the right to inspect the contents of an employee's personnel file within one day after the request is made.

### SECTION D- PROGRESSIVE DISPLINE:

All discipline shall be progressive in nature following the step process below:

Step 1.        Verbal Counseling: (Minor offense); For purposes of this Article, it shall be the DISTRICT'S sole discretion to document verbal counseling sessions. If the Fire DISTRICT chooses not to document a verbal counseling session, such verbal counseling session shall not be considered discipline for purposes of this Agreement.

Step 2.        Verbal Corrective Action: (Minor offense or repeated Minor offenses); Verbal reprimands shall be documented and require a written corrective action plan for the employee to be valid.

Step 3.        Written Corrective Action: (Intermediate Offense or repetition of or failure to correct a minor offense, commission of another type of minor offense within a reasonable time, or persistent performance deficiencies); with written

corrective action plan for the employee. A written corrective action usually will be issued after a personal discussion of the problem between the member and the issuing supervisor and be accompanied with a written corrective action plan. After a 12-month period if the issue has been corrected, all relevant documentation shall be removed from the employee's file. Employees are responsible for removing the relevant documentation in his/her file after the 36-month period.

Step 4.     Suspension without pay: Used either as a corrective measure, or to remove a member from the premises for a period of time.

Step 5.     Demotion of rank. Used in cases of intermediate offenses with at least one written corrective action, continued performance deficiencies (previously identified in a written performance evaluation or written corrective action) or unacceptable responses to corrective action by the member.

Step 6.     Discharge: Used in cases of major offenses, repeated or uncorrected minor or intermediate offenses after multiple written corrective action, continued performance deficiencies (previously identified in a written performance evaluation or written corrective action) or unacceptable responses to corrective action by the member.

## SECTION E: NOTIFICATION OF DISCIPLINE:

No written reprimand or greater disciplinary document may be placed in an employee's personnel file without the employee having been first notified of the written corrective action or other greater disciplinary document. If the employee requests in writing that a copy of the written reprimand or greater disciplinary document be provided to the employee's UNION representative, the DISTRICT shall also provide a copy to the UNION. At the time the employee is notified of the written reprimand or greater disciplinary document, the employee shall be requested to sign the written reprimand or greater disciplinary document to acknowledge that they have read its contents. Signature thereon shall not be construed as admission of guilt or concurrence with the discipline described but rather an indication that the employee has seen and comprehends the gravity of the disciplinary action.

## SECTION F- UNION NOTIFICATION:

The DISTRICT shall notify Local President or Vice President of the UNION if a member covered under this agreement is being investigated by the DISTRICT for a possible offense that would result in a disciplinary action. Any investigation findings discovered during the course of an investigation of a member covered under this agreement shall immediately be shared with the

UNION president. Any member who is investigated for a possible offense that would qualify for disciplinary action of suspension without pay or higher shall receive a Loudermill hearing prior to any disciplinary action being levied, except in such cases where termination is the result of criminal misconduct or prohibited by applicable privacy laws.

## SECTION G- MEMBERS NOT COVERED:

The disciplinary procedures described herein shall be the exclusive procedures governing discipline for those employees to whom this Agreement applies. Should the DISTRICT modify or eliminate the disciplinary procedures contained within its Policy Manual for members not covered in this agreement the UNION shall have no right to bargain or grieve any such modification.

## ARTICLE 25 - TERMS OF SUCCESSORSHIP

This Agreement shall be binding upon the successors and assigns of the UNION and the DISTRICT, and no provisions, terms, or obligations herein contained shall be effected, modified, altered, or changed in any respect whatsoever by the consolidation, merger, annexation, transfer, or assignment of the UNION or the DISTRICT: or affected, modified, altered, or changed in any respect whatsoever by any change of an kind of the ownership or management of either the DISTRICT or the UNION: or by change geographically or otherwise in the location or place of business of the UNION or DISTRICT.

## ARTICLE 26 - REDUCTIONS IN FORCE

## SECTION A- SOLE DISCRETION:

Reductions in force shall be undertaken as deemed necessary by the DISTRICT, and the decision to reduce personnel shall be made at the sole discretion of the DISTRICT.

## SECTION B- LEAST SENIOR:

In the case of a reduction in force, when merit and ability are equal, the employee having the least seniority in the DISTRICT shall be laid off first. In the case of reduction in rank, when merit and ability are equal, the employee having the least seniority in the ranked position shall be reduced in rank first.

## SECTION C- RECALL:

When employees are laid off, their names shall be placed on a one (1) year re-employment list in inverse order of layoff. The employees shall remain on this list for a period of one (1) year. If the DISTRICT determines in its sole discretion to recall personnel for employment, and if the former employees on the re-employment list are currently qualified and one (1) year has not passed since their layoff, such employees on the re-employment list will be given the first

opportunity to return to work in the order of greatest seniority as a full-time employee in the DISTRICT.

## ARTICLE 27 - SAVING CLAUSE

If any provision of this Agreement or the application of such provision should be rendered or declared invalid by any court action, or by reason of any existing or subsequently enacted legislation, the remaining parts or portions of this Agreement shall remain in full force and effect.

Upon issuance of such a decision, the parties agree to begin negotiations of a replacement Article within a period not to exceed fifteen (15) days.

## ARTICLE 28 - ANNEXATION, MERGER, AND CONSOLIDATION

All decisions and determinations undertaken by the DISTRICT in connection with any annexation, merger, or consolidation activity, including any contracting out that may occur in connection with such activity, shall be the exclusive province of the DISTRICT. Provided, however, that the DISTRICT agrees to bargain the effects of any such activity on the bargaining unit.

## ARTICLE 29 - SUBSTANCE ABUSE

The DISTRICT and the UNION jointly recognize that alcohol and drug abuse problems are a serious safety hazard. The use of illegal drugs or alcohol, or impairment by prescription medication or illegal drugs or alcohol while on duty, constitutes just cause for discharge. The DISTRICT may require screening of an employee where it has reasonable suspicion to believe said employee is impaired by alcohol, illegal drugs or prescription medication while at work.

### PROHIBITED DRUG OR ALCOHOL ACTIVITIES:

Employees who are under the influence of alcohol or drugs on the job or who possess or consume alcohol or drugs on the job have the potential for affecting their own as well as their coworkers safe and efficient job performance. Employees are strictly prohibited from using, selling, possessing or being under the influence of either illegal drugs or alcohol while performing District business on or off District premises. Violation of this prohibition may subject the employee to disciplinary action as outlined in Article 23 of this Agreement.

The term "illegal drug" includes the improper use and/or abuse of prescription drugs. Employees who are directed by their doctor to take prescription drugs shall immediately inform their supervisor of such use if there is any job limitation such use may suggest.

## DRUG OR ALCOHOL TESTING:

The DISTRICT may request to implement a non-discriminatory policy of random drug testing as a requirement of the DISTRICT's insurance policy. The DISTRICT shall request, in writing, to bargain the implementation and terms of such a policy. These terms shall include, but not limited to, what drugs are to be tested for and at what levels, who (company) will conduct the testing and when the testing shall be done (i.e., on-duty).

Employee testing will be conducted in accordance with procedures prescribed or approved by the Drug & Alcohol Testing Industry Association (DATIA).

Upon written request by the DISTRICT, the UNION shall promptly meet with the DISTRICT to bargain over matters of concern to the DISTRICT that involve alcohol and drug abuse prevention in the DISTRICT.

## ARTICLE 30 - RULES AND REGULATIONS

### SECTION A:

All employees covered under this agreement shall comply with the rules and regulations, Personnel Policies, and Standard Operating Guidelines of the DISTRICT, except as specifically modified by this Agreement.

### SECTION B:

The DISTRICT agrees that an allegation of arbitrary, capricious, or discriminatory application of its rules and regulations shall be subject to the grievance procedure.

### SECTION C:

Upon written request by either UNION or the DISTRICT, each party agrees to meet and confer on the intended meaning and application of any of the DISTRICT'S rules and regulations, Personnel Policies, or Standard Operating Guidelines. In addition, if either party wishes to propose deletions, modifications, or additions to any such rules and regulations, Personnel Policies, or Standard Operating Guideline during the term of this Collective Bargaining Agreement, each party agrees to meet and confer with each other on those matters. However, the DISTRICT has the right to delete, modify, or add to the DISTRICT'S rules and regulations, Personnel Policies, or Standard Operating Guidelines, with or without the consent of the UNION, so long as the DISTRICT does not diminish or nullify any of the UNION'S rights or benefits that are contained in this Collective Bargaining Agreement and Idaho Code Title 44, Chapter 18.

### SECTION D:

The DISTRICT shall not discipline or discharge any employee who is a member of this UNION in accordance with the provisions set forth in the Personnel Policies without just cause. Disciplinary matters shall be subject to the grievance policy.

## ARTICLE 31 - VACANCIES AND PROMOTIONS

### SECTION A- VACANCIES:

The DISTRICT shall fill any permanent vacancies in entry level positions or promotional positions within 90 days of vacancy using the guidelines outlined in Sections B and C of this Article.

### SECTION B- EXAM PROCESS:

All vacancies shall be filled through the DISTRICT'S competitive exam process, determined in its sole discretion by the DISTRICT. During the competitive exam process the minimum passing score on a written test is an 80%. If a passing score on the written test is not achieved the applicant cannot continue the competitive exam process and shall not be considered for the position. The UNION shall be consulted in a joint labor/ management meeting setting regarding the competitive examination; however, the DISTRICT shall have no obligation to bargain over the development of or change in the competitive examination process for entry-level hires or promotions within the bargaining unit. All promotions within the bargaining unit shall be based solely on merit, efficiency, experience, knowledge, and fitness ascertained by competitive examination. If the member applying for the promotion has five or more years of experience at Mica Kidd Island Fire Protection District will receive 5 preference points added to their score at the end of the testing process.   All members of the bargaining unit may apply for promotions within the bargaining unit. If no bargaining unit member applies for the promotion, then that position can be opened to outside the bargaining unit applicants.

*Lateral Entry Personnel* **Definition:** "Lateral Entry Personnel" as used in this Agreement shall mean any uniformed fire suppression employee (as defined by Article 1) who, at the time their employment with the DISTRICT begins:

1) Is assigned an entry position other than Recruit Firefighter, and
2) Has met all entry level minimum requirements, and
3) Has a 12-month probationary period, and
4) Has prior service time as a career firefighter with another fire protection agency, and
5) The District shall evaluate the employees' training, experience, and qualifications, and place the lateral entry employee appropriately within the monthly wage schedule of Appendix A of this Agreement without regard to the prerequisite "Months of Service" provision of the schedule for initial placement therein. Lateral entry personnel shall be required to complete task book(s) mandated by this Agreement.

### SECTION C- ENTRY LEVEL LIST:

Entry level lists shall be re-established no later than the expiration date of the current list in order to always have an established entry level list available to draw from. Entry level lists will have a life of twenty-four (24) months unless otherwise agreed by the parties. If the list is exhausted prior to the list's expiration date, the DISTRICT will re-establish the list as soon as feasible using the DISTRICT's competitive exam process. In the event of exigent or unique circumstances, the DISTRICT and the UNION may agree to deviate from any of the provisions set forth in sections B or C.

## SECTION D- PROMOTIONAL LISTS:

Promotional lists will be established as soon as the DISTRICT is made aware of the potential for a vacancy. The promotional list shall be established no later than 90 days from the date the DISTRICT is made aware of the potential vacancy. If a vacancy occurs in a promotional position, the position shall be temporarily filled by the number one (1) firefighter on the most recently expired promotional list covered by this Agreement at the out of class rate set forth in Article 16. If the number one (1) firefighter is unwilling or unable to assume the temporary assignment, the position will be offered to the next firefighter on the recently expired promotional list and so on until the temporary assignment is filled.   In the event there is no one on the list who is able or willing to fill the temporary assignment, the temporary assignment will be offered to the most senior firefighter who has completed the highest level of the Professional Development Program. If this candidate declines the offer, the next most senior firefighter with the highest level of completion of the Professional Development Program will be offered the assignment and so on until it is filled.

Following creation of the promotional list, the appointment to the position shall be made by the DISTRICT in its sole discretion. The number one (1) candidate shall be given the first consideration. If the number one (1) candidate is passed over, and if requested by the employee(s), the DISTRICT shall give the passed-over candidate(s) written reason(s) for not being selected. If the list is exhausted and a position needs to be filled prior to the list's expiration date, the DISTRICT will re-establish the list and fill the vacancy within nine (9) months using the DISTRICT's competitive exam process.

## ARTICLE 32 - DEFERRED COMPENSATION

Employees may participate in any qualified deferred compensation program approved by the District, including but not limited to the IAFF-FC Program.

## ARTICLE 33 - RETIREE MEDICAL TRUST

SECTION A:

A retiree Medical Trust program will be implemented subject to the following provisions:

1) The District and the UNION agree that the UNION may unanimously opt to participate in non-District related benefit plans and programs for the exclusive use and benefit of bargaining unit employees.

2) If the UNION chooses to unanimously participate in such programs, it does so autonomously, and the District shall have no legal or financial obligation(s) for such insurance policies, programs or assessments. Under Idaho law, all payroll withholdings require written authorization by each employee. The District reserves the right to restrict the number of assessments/programs available through payroll withholding.

3) Medical Expense Reimbursement Program (MERP): Should the UNION unanimously opt to participate in a self-pay MERP all costs associated with the program shall be paid one hundred percent (100%) by the employees.

4) If adopted, the District shall deduct MERP contributions in accordance with each employee's written authorization and shall forward said contributions to the UNION's designated MERP trust fund administrator no later than the twentieth (20th of each month following the month in which the contributions were withheld. The MERP contribution and trust fund administrator shall be certified by the Treasurer of the UNION.

5) The UNION and the Employees agree to hold the District harmless and indemnify the District from any and all liability, claims, demands, lawsuits, and/or losses, damage or injury to persons or property, of whatsoever kind, arising from and in any way related to the implementation and administration of all non-District related benefit plans, including but not limited to the MERP plan discussed above. The UNION and Employees shall be one hundred percent (100%) liable for any and all liabilities that arise out of such plans. The UNION and Employees shall be liable for any and all tax penalties, as well as any other liabilities and audit costs arising out of the implementation and administration of the MERP.

## ARTICLE 34 - ACTIVE 911

The District agrees to provide Active911 for all Union members and pay for all costs associated with Active911.

## ARTICLE 35 - NFPA 1582 ANNUAL PHYSICAL

Due to the potentially harmful atmospheres of Fire Fighting. The District agrees to provide $250.00 per year stipend for each Employee to help off-set the cost of an Annual Physical. Employee must show proof of completion of a physical that meets or exceeds NFPA 1582

to receive the annual physical stipend.

## ARTICLE 36 – TUITION REIMBURSEMENT

The DISTRICT will provide one hundred percent (100%) reimbursement of tuition for educational courses up to a maximum of five hundred dollars ($500) per employee per year for coursework approved in accordance with guidelines established by the District.

IN WITNESS THEREOF, the parties have executed this Agreement on this 2ⁿᵈ day February, 2021.

**Mica Kidd Island Fire Protection District Board of   IAFF Local 5005, MKI Bargaining Unit
Commissioners**

_(signature)_

Larry Mundt, Chair: Sub-District 3

_(signature)_

Ben Deon, IAFF Local 5005 President

_(signature)_

Daniel Hanson, Vice-Chair: Sub-District 1

_(signature)_

Rob Mature, IAFF 5005 MKI Unit VP

_(signature)_

Robert Bjelland, Sub-District 2

## APPENDIX A- WAGES AND HOURLY RATES

|  | 2021-2022 | 2022-2023 | 2023-2024 |
|---|---|---|---|
| **Lieutant** | | | |
| Base Annual Wage | $ 48,698.83 | $ 49,672.81 | $ 50,666.26 |
| Straight Time | $ 17.60 | $ 17.95 | $ 18.31 |
| OT Rate | $ 26.39 | $ 26.92 | $ 27.45 |
| **Firefighter II** | | | |
| Base Annual Wage | $ 45,091.51 | $ 45,993.34 | $ 46,913.20 |
| Straight Time | $ 16.29 | $ 16.62 | $ 16.95 |
| OT Rate | $ 24.44 | $ 24.93 | $ 25.43 |
| **Firefighter I** | | | |
| Base Annual Wage | $ 42,836.93 | $ 43,693.67 | $ 44,567.54 |
| Straight Time | $ 15.47 | $ 15.78 | $ 16.10 |
| OT Rate | $ 23.22 | $ 23.68 | $ 24.15 |
| **Probationary Firefighter** | | | |
| Base Annual Wage | $ 36,488.74 | $ 37,218.51 | $ 37,962.89 |
| Straight Time | $ 13.44 | $ 13.71 | $ 13.99 |
| OT Rate | $ 20.17 | $ 20.57 | $ 20.98 |

## CONVERTING A 24-DAY WORK PERIOD TO A 14-DAY PAY PERIOD

FLSA 7(k) exemption states that any hours worked over 182 in a 24 hour work period must be paid at time and a half

A 48/96 schedule works with a 24 day or 18 day work period (24 days = 192 scheduled hours (182 ST & 10 OT)

| Straight Time- | | Overtime- | |
|---|---|---|---|
| 365 | Days in a year divided by | 365 | Days in a year divided by |
| 24 | Days in work period | 24 | Days in work period |
| = | | = | |
| 15.20833 | Work periods multiplied by | 15.20833 | Work periods multiplied by |
| *        182 | hours ST in a 24 day work period | *        10 | FLSA OT hours (192-182) |
| 2767.917 | ST hours in a year | 152.0833 | FLSA OT hours in a year |
| 365 | Days in a year divided by | 365 | Days in a year divided by |
| 14 | Days in pay period (biweekly) | 14 | Days in pay period (biweekly) |
| = | | = | |
| 26.07143 | Pay periods in a year | 26.07143 | Pay periods in a year |
| 2767.917 | ST hours in a year divided by | 152.0833 | FLSA OT hours in a year divided by |
| 26.07143 | Pay periods in a year | 26.07143 | Pay periods in a year |
| = | | = | |
| 106.1667 | ST hours per pay period | 5.833333 | FLSA OT hours per pay period |
| 106.17 | rounded | 6 | rounded |
| 2767.917 | | ST hours/year plus | |
| +        152.0833 | | FLSA OT hours/year | |
| 2920 | | hours scheduled/year/shift multiplied by | |
| *        3 | | battalions/shifts | |
| 8760 | | hours in 365 days | |

| 365 | | days in year multiplied by |
| --- | --- | --- |
| * | 24 | hours in day |
| 8760 | | |

Each paycheck: 106.17 ST hours & 6 FLSA OT hours, plus any additional OT worked

Base Annual Wage divided by 26.07143 = Quotient then Quotient divided by 106.17 = HR Rate

This incentive shall be included in the calculation of the employee hourly wage.

Progression

Progression through the firefighter pay schedule from Recruit Firefighter to Top-Step Firefighter is dependent on the employee completing required task book developed by the District and offered annually. (Refer to Article 20 Section C of this Agreement)

Promotion

Promotion to Lieutenant shall be in accordance with the promotion process as set forth in Article 31 of this Agreement.

Memorandum of Understanding

Between

IAFF Local Union 5005

And

Mica Kidd Island Fire Protection District

This Memorandum of Understanding (the "Memorandum") is effective on February 3, 2021 for the duration of the 2021-2024 Collective Bargaining agreement by Mica Kidd Island Fire Protection District, (hereinafter referred to as the "District") and the IAFF Local Union 5005, (hereinafter referred to as the "Union") for the purpose of solely modifying the Collective Bargaining Agreement

ARTICLE 13 Sick Leave Section A: Sick Leave Schedule and Accrual

Appendix A – Wages and Hourly Rates

# ARTICLE 13 - Sick Leave

## SECTION A- SICK LEAVE SCHEDULE AND ACCRUAL:

1) 24-hour shift employees shall accrue sick leave on an hourly basis at the rate of twelve (12) hours per each month of service completed from the date of hire.
2) Sick leave shall not accrue during a leave of absence without pay or during layoffs.
3) The maximum sick leave accrual will be four hundred eighty (480) hours for 24-hour shift employees.

APPENDIX A- Wages and hourly rates

|  | 2021 - 2022 | 2022-2023 | 2023-2024 |
|---|---|---|---|
| **Lieutenant** | | | |
| Base Annual Wage | $46,698.83 | $49,672.81 | $50,666.26 |
| Straight Time | $17.60 | $17.95 | $18.31 |
| OT Rate | $26.39 | $26.92 | $27.45 |
| **Firefighter II** | | | |
| Base Annual Wage | $45,091.51 | $45,993.34 | $46,193.20 |
| Straight Time | $16.29 | $16.62 | $16.95 |
| OT Rate | $24.44 | $24.93 | $25.43 |
| **Firefighter I** | | | |
| Base Annual Wage | $42,836.93 | $43,693.67 | 44,567.54 |
| Straight Time | $15.47 | $15.78 | $16.10 |
| OT Rate | $23.22 | $23.68 | $24.15 |
| **Probationary Firefighter** | | | |
| Base Annual Wage | $37,218.51 | $37,962.89 | $38,722.14 |
| Straight Wage | $13.44 | $13.71 | $13.99 |
| OT Rate | $20.17 | $20.57 | $20.98 |

No liability will arise or be assumed between the partners as a result of this Memorandum.

This Memorandum may be amended or supplemented in writing, if the writing is signed by both the District and the Union.

This Memorandum constitutes the entire Memorandum between the parties relating to the CBA Articles 13 Section A, and Appendix A and supersedes all prior representations, discussions, negotiations, contracts and memorandums, whether written or oral for CBA Articles 13 Section A, and Appendix A.

**WITNESS THEREOF, the parties have executed this Agreement on this** 24 **day** March , 2021.

**Mica Kidd Island Fire Protection District Board of Commissioners**      IAFF Local 5005, MKI Bargaining Unit

Larry Mundt, Chair: Sub-District 3      Ben Deon, IAFF Local 5005 President



# MICA KIDD ISLAND FIRE DISTRICT
## 6891 W Kidd Island Rd
## Coeur d Alene, Idaho 83814

March 12, 2021

Mr. Austin Bedwell
12886 N.Gandy Dancer Rd
Rathdrum, ID 83858

Mr. Bedwell,

The Mica Kidd Island Fire Protection District is extending a conditional offer of employment to you as a Firefighter/EMT subject to the following terms and conditions:

*Satisfactory post-offer employment physical and drug testing. Since we are in the midst of a COVID-19 Pandemic our testing facility may not currently be taking patients. You will be scheduled for a physical as soon as conditions allow.*

You will be placed into the Firefighter's staffing rotation immediately where you will complete 12 months of probation and complete a new employee task book.

Your annual salary will be $37,218.51 plus overtime, paid leave and benefits per Local 5005 labor contract.

Your tentative start day is March 29, 2021 at 08:00 at MKI Fire Station #1.

Chief: Dan Sneve                                    03/15/2021
                                                    Date

Deputy Chief: Ron Templeton                        3/12/2021
                                                    Date

Probationary Firefighter: Austin Bedwell           3/12/2021
                                                    Date

**EXHIBIT B**

Office: 208-686-1718          Fax:  208-686-1191          admin@mkifire.com

# LOCAL  5005

P.O. Box 412 Worley, ID 83876

_____

March 12, 2022

Chief Rob Matue,

On or about February 14, 2022, you terminated the employment of IAFF Local 5005 member Austin Bedwell.  Firefighter Bedwell contacted the local to request the grievance committee evaluate his termination and the process thereof.  We the grievance committee of Local 5005 are officially initiating Step 2 of the grievance procedure.  We believe that the termination and the process violated the collective bargaining agreement between Local 5005 and the Mica Kidd Island Fire District.  Violations of the agreement include but are not limited to Article 5, Section B which allows management to "suspend, discipline, demote, or discharge, for just cause".  We believe that firefighter Bedwell was denied due process including but not limited to the lack of a Loudermill Hearing prior to termination and the lack of just cause for termination.

In addition to the violations of the collective bargaining agreement, we believe the language in the agreement that separates probationary from non-probationary members creates two classes of employees and may be illegal under Idaho's Right to Work statute as well the U.S. Supreme Courts' Janus vs. ASFCME ruling in 2018.  While this has not been challenged in court yet, we believe the intent of the statute and the ruling is to prevent the creation of different classes of employees and the rights afforded to them.

The following information was collected during the union investigation of the incident including conversations with FF Bedwell and the meeting with you, President Deon and PFFI Rep Bieker on March 11th, 2022.

- On the morning of Jan 31st, FF Bedwell responded code 3 in R281 to a Delta Difficulty Breathing on Cloudy View Lane.  FF Bedwell turned off the siren once arriving at the residence and left the lights on to mark the location of the call for incoming units.
- Later that day, at the Mica-Kidd Island fire station you, commissioner Hanson and FF Bedwell had conversation in which commissioner asked FF Bedwell if he normally turns

EXHIBIT C

into a driveway with his lights and sirens on.  FF Bedwell stated that he said, "it depends on the day".  You allege that he said, "he turned them off at the gate" and that commissioner Hanson said that he had witnessed FF Bedwell drive up the driveway with the lights and sirens on.

- You allege that FF Bedwell lied to you and commissioner Hanson about what point he turned off the lights and sirens, but you stated you do not dispute that a code 3 response is appropriate.  You also stated that you do not believe there is a policy about turning off the siren as a courtesy

- On or about January 31st, you verbally counseled FF Bedwell about the interaction with commissioner Hanson being "rude and disrespectful", FF Bedwell stated he did not intend to be rude and that he would apologize to the commissioner.  The counseling was not documented in the personnel file, and you did not mention anything about lying during the verbal counseling.

- On or about February 14th, 2022, you called a meeting with FF Bedwell and informed him that he was being terminated for conduct unbecoming.  You stated that you did not discuss/ask FF Bedwell about the alleged lying prior to termination.  It was clear during the meeting with you, President Deon and representative Bieker that you did not give him a chance to answer to the alleged charges and did not conduct a pre-termination/Loudermill hearing prior to making the decision to terminate.

- On or about February 14th, 2022, FF Bedwell asked for a copy of everything in his personnel file.  The file contained four documents.  One email and 2 letters (one from Chief Sneve and one from Chief Matue) all relating to a timecard that was not turned in on time and FF Bedwell's email response to Admin Assistant Saranto.  The last document was an email from a Worley Lieutenant discussing FF Bedwell's performance on a call.  The email had never been discussed with FF Bedwell and not even a verbal counseling session resulted from the call.

- During the meeting with President Deon and representative Bieker you stated that you had solicited coworkers and adjacent agencies for input on FF Bedwell after you terminated him.  You also stated that you had additional information on FF Bedwell in a personal file separate from his personnel file.

We believe that due process is integral to the discipline procedure and request that firefighter Bedwell be reinstated as a full-time firefighter of the Mica Kidd Island Fire District and be made whole in every way.

Thank you for your consideration of this matter, we look forward to hearing from you.

Sincerely,

Local 5005 Grievance Committee

Sawyer Clizer, Chair

President of Local 5005

Ben Deon

# LOCAL



# 5005

P.O. Box 412 Worley, ID 83876

_____

March 28, 2022

Board of Fire Commissioners,

On or about February 14, 2022, IAFF Local 5005 member Austin Bedwell was terminated from employment.  Firefighter Bedwell contacted the local to request the grievance committee evaluate his termination and the process thereof.  We the grievance committee of Local 5005 are officially initiating Step 3 of the grievance procedure.  We believe that the termination and the process violated the collective bargaining agreement between Local 5005 and the Mica Kidd Island Fire District.  Violations of the agreement include but are not limited to Article 5, Section B which allows management to "suspend, discipline, demote, or discharge, for just cause".  We believe that firefighter Bedwell was denied due process including but not limited to the lack of a Loudermill Hearing prior to termination and the lack of just cause for termination.

In addition to the violations of the collective bargaining agreement, we believe the language in the agreement that separates probationary from non-probationary members creates two classes of employees and may be illegal under Idaho's Right to Work statute as well the U.S. Supreme Courts' Janus vs. ASFCME ruling in 2018.  While this has not been challenged in court yet, we believe the intent of the statute and the ruling is to prevent the creation of different classes of employees and the rights afforded to them.

The following information was collected during the union investigation of the incident including conversations with FF Bedwell and the meeting with Chief Matue, President Deon and PFFI Rep Bieker on March 11th, 2022.

- On the morning of Jan 31st, FF Bedwell responded code 3 in R281 to a Delta Difficulty Breathing on Cloudy View Lane.  FF Bedwell turned off the siren once arriving at the residence and left the lights on to mark the location of the call for incoming units.
- Later that day, at the Mica-Kidd Island fire station Chief Matue, commissioner Hanson and FF Bedwell had conversation in which commissioner asked FF Bedwell if he normally turns into a driveway with his lights and sirens on.  FF Bedwell stated that he said, "it depends on the day".  Chief Matue alleges that FF Bedwell said, "he turned them off at the gate" and that commissioner Hanson said that he had witnessed FF Bedwell drive up the driveway with the lights and sirens on.
- Chief Matue alleges that FF Bedwell lied to him and commissioner Hanson about what point he turned off the lights and sirens, but Chief Matue stated he did not dispute that a code 3 response was appropriate.  Chief Matue also stated that he did not believe there is

EXHIBIT D

a policy about turning off the siren as a courtesy, and no policy was produced during the meeting.

- On or about January 31st, Chief Matue verbally counseled FF Bedwell about the interaction with commissioner Hanson being "rude and disrespectful", FF Bedwell stated he did not intend to be rude and that he would apologize to the commissioner. The counseling was not documented in the personnel file, and Chief Matue did not mention anything about lying during the verbal counseling.

- On or about February 14th, 2022, Chief Matue called a meeting with FF Bedwell and informed him that he was being terminated for conduct unbecoming. Chief Matue stated that he did not discuss/ask FF Bedwell about the alleged lying prior to termination. It was clear during the meeting with Chief Matue, President Deon and representative Bieker that he did not give him a chance to answer to the alleged charges and did not conduct a pre-termination/Loudermill hearing prior to making the decision to terminate.

- On or about February 14th, 2022, FF Bedwell asked for a copy of everything in his personnel file. The file contained four documents. One email and 2 letters (one from Chief Sneve and one from Chief Matue) all relating to a timecard that was not turned in on time and FF Bedwell's email response to Admin Assistant Saranto. The last document was an email from a Worley Lieutenant discussing FF Bedwell's performance on a call. The email had never been discussed with FF Bedwell and not even a verbal counseling session resulted from the call.

- During the meeting with President Deon and representative Bieker, Chief Matue stated that he had solicited coworkers and adjacent agencies for input on FF Bedwell after he terminated him. Chief Matue also stated that he had additional information on FF Bedwell in a personal file separate from his personnel file.

- Local 5005 Grievance committee initiated Step 2 of the grievance procedure on or about March 12, 2022 by sending electronic written communication to Chief Matue. On or about March 22, 2022 we received an email from Chief Matue stating that he has denied the grievance citing Article 23 of the collective bargaining agreement which states that "During the probationary period, employees may be terminated without cause and without recourse to the grievance and arbitration provisions of this agreement."

We do not feel that the grievance has been resolved at step 2. Per Article 22 – Grievance Procedure we are officially initiating Step 3 of the grievance procedure.

We believe that due process is integral to the discipline procedure and request that firefighter Bedwell be reinstated as a full-time firefighter of the Mica Kidd Island Fire District and be made whole in every way.


Thank you for your consideration of this matter, we look forward to hearing from you.


Sincerely,

Local 5005 Grievance Committee

Sawyer Clizer, Chair

Local 5005 President


Ben Deon

# LOCAL  *5005*

P.O. Box 412 Worley, ID 83876

_____

March 28, 2022

Board of Fire Commissioners,

On or about February 14, 2022, IAFF Local 5005 member Austin Bedwell was terminated from employment.  Firefighter Bedwell contacted the local to request the grievance committee evaluate his termination and the process thereof.  We the grievance committee of Local 5005 are officially initiating Step 3 of the grievance procedure.  We believe that the termination and the process violated the collective bargaining agreement between Local 5005 and the Mica Kidd Island Fire District.  Violations of the agreement include but are not limited to Article 5, Section B which allows management to "suspend, discipline, demote, or discharge, for just cause".  We believe that firefighter Bedwell was denied due process including but not limited to the lack of a Loudermill Hearing prior to termination and the lack of just cause for termination.

In addition to the violations of the collective bargaining agreement, we believe the language in the agreement that separates probationary from non-probationary members creates two classes of employees and may be illegal under Idaho's Right to Work statute as well the U.S. Supreme Courts' Janus vs. ASFCME ruling in 2018.  While this has not been challenged in court yet, we believe the intent of the statute and the ruling is to prevent the creation of different classes of employees and the rights afforded to them.

The following information was collected during the union investigation of the incident including conversations with FF Bedwell and the meeting with Chief Matue, President Deon and PFFI Rep Bieker on March 11ᵗʰ, 2022.

- On the morning of Jan 31ˢᵗ, FF Bedwell responded code 3 in R281 to a Delta Difficulty Breathing on Cloudy View Lane.  FF Bedwell turned off the siren once arriving at the residence and left the lights on to mark the location of the call for incoming units.
- Later that day, at the Mica-Kidd Island fire station Chief Matue, commissioner Hanson and FF Bedwell had conversation in which commissioner asked FF Bedwell if he normally turns into a driveway with his lights and sirens on.  FF Bedwell stated that he said, "it depends on the day".  Chief Matue alleges that FF Bedwell said, "he turned them off at the gate" and that commissioner Hanson said that he had witnessed FF Bedwell drive up the driveway with the lights and sirens on.
- Chief Matue alleges that FF Bedwell lied to him and commissioner Hanson about what point he turned off the lights and sirens, but Chief Matue stated he did not dispute that a code 3 response was appropriate.  Chief Matue also stated that he did not believe there is

EXHIBIT E

a policy about turning off the siren as a courtesy, and no policy was produced during the meeting.

- On or about January 31st, Chief Matue verbally counseled FF Bedwell about the interaction with commissioner Hanson being "rude and disrespectful", FF Bedwell stated he did not intend to be rude and that he would apologize to the commissioner. The counseling was not documented in the personnel file, and Chief Matue did not mention anything about lying during the verbal counseling.
- On or about February 14th, 2022, Chief Matue called a meeting with FF Bedwell and informed him that he was being terminated for conduct unbecoming. Chief Matue stated that he did not discuss/ask FF Bedwell about the alleged lying prior to termination. It was clear during the meeting with Chief Matue, President Deon and representative Bieker that he did not give him a chance to answer to the alleged charges and did not conduct a pre-termination/Loudermill hearing prior to making the decision to terminate.
- On or about February 14th, 2022, FF Bedwell asked for a copy of everything in his personnel file. The file contained four documents. One email and 2 letters (one from Chief Sneve and one from Chief Matue) all relating to a timecard that was not turned in on time and FF Bedwell's email response to Admin Assistant Saranto. The last document was an email from a Worley Lieutenant discussing FF Bedwell's performance on a call. The email had never been discussed with FF Bedwell and not even a verbal counseling session resulted from the call.
- During the meeting with President Deon and representative Bieker, Chief Matue stated that he had solicited coworkers and adjacent agencies for input on FF Bedwell after he terminated him. Chief Matue also stated that he had additional information on FF Bedwell in a personal file separate from his personnel file.
- Local 5005 Grievance committee initiated Step 2 of the grievance procedure on or about March 12, 2022 by sending electronic written communication to Chief Matue. On or about March 22, 2022 we received an email from Chief Matue stating that he has denied the grievance citing Article 23 of the collective bargaining agreement which states that "During the probationary period, employees may be terminated without cause and without recourse to the grievance and arbitration provisions of this agreement."

We do not feel that the grievance has been resolved at step 2. Per Article 22 – Grievance Procedure we are officially initiating Step 3 of the grievance procedure.

We believe that due process is integral to the discipline procedure and request that firefighter Bedwell be reinstated as a full-time firefighter of the Mica Kidd Island Fire District and be made whole in every way.

Thank you for your consideration of this matter, we look forward to hearing from you.

Sincerely,

Local 5005 Grievance Committee

Sawyer Clizer, Chair

Local 5005 President

Ben Deon